**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

AMANDA MICHELLE R.-Z.,

                              Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

No. 6:24-CV-01454
(PJE)

---

**APPEARANCES:**

Olinsky Law Group
250 South Clinton Street- Suite 210
Syracuse, New York 13202
Attorneys for plaintiff

Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, Maryland 21235
Attorneys for defendant

**OF COUNSEL:**

HOWARD D. OLINSKY, ESQ.

GEOFFREY M. PETERS, ESQ.

**PAUL J. EVANGELISTA
U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER[1]

Amanda Michelle R.-Z.[2] ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of the Social Security Administration ("the Commissioner") denying her application for disability insurance

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, L.R. 72.2(b), L.R. 72.3(b), and General Order 18.  *See* Dkt. No. 5.

[2] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

benefits ("DIB").  *See* Dkt. No. 1.  Plaintiff cross-moves for the Commissioner's decision to be vacated and remanded for further proceedings.  *See* Dkt. No. 12.  The Commissioner cross-moves for the decision to be affirmed.  *See* Dkt. No. 13.[3]  Plaintiff filed a reply.  *See* Dkt. No. 14.  For the following reasons, plaintiff's cross-motion is granted, the Commissioner's cross-motion is denied, and the Commissioner's decision is reversed and remanded for further proceedings.

## I.  **Background**

On October 28, 2022, plaintiff filed a Title XII application for DIB benefits, alleging a disability onset date of July 21, 2022.  *See id*. at 76, 240-41[4] (*See* Dkt. Nos. 9-3, 9-5)[5].  On March 16, 2023, the Social Security Administration ("SSA") denied plaintiff's claim.  *See id.* at 107-10 (*See* Dkt. No. 9-4).  Plaintiff sought reconsideration, which the SSA denied on October 12, 2023.  *See id.* at 151-55 (*See* Dkt. No. 9-4).  Plaintiff appealed and requested a hearing.  *See id*. at 156-57 (*See* Dkt. No. 9-4).  On June 25, 2024, a hearing was held before Administrative Law Judge ("ALJ") Jennifer Smith.  *See id.* at 33-75 (*See* Dkt. No. 9-2).  On July 31, 2024, the ALJ issued an unfavorable decision.  *See id.* at 12-32 (*See* Dkt. No. 9-2).  On October 15, 2024, the Appeals Council affirmed the ALJ's determination, and the decision became final.  *See id*. at 1-6 (*See* Dkt. No. 9-2).  Plaintiff commenced the instant action on December 2, 2024.  *See* Dkt. No. 1.

---

[3] This matter has been treated in accordance with General Order 18.  Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[4] "T." followed by a number refers to the pages of the administrative transcript.  *See* Dkt. No. 9.  Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page.  Citations to the parties' briefs refer to the pagination generated by the Court's electronic filing program, located at the header of each page.

[5] Due to the voluminous nature of the administrative transcript, which the Commissioner uploaded to the Court's docket in multiple parts, in addition to the record citation, the Court includes the docket cite for factual citations.

## II. **Legal Standards**

### A. **Standard of Review**

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Id*. (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotation marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal

3

standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id*. (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

## B.  **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ."  42 U.S.C. § 423(a)(1)(E).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  *Id.* § 423(d)(1)(A).  "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience."  *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)).  "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'"  *Id.* (citing 42 U.S.C. § 423(d)(3)).  "Additionally, the severity of the impairment is 'based on objective medical facts, diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'"  *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

4

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.

Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)). "The plaintiff bears the initial burden of proof to establish each of the first four steps." *Id*. (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)). "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere." *Id.* (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

### III. **The ALJ's Decision**

The ALJ determined that plaintiff "last met the insured status requirements of the Social Security Act on September 30, 2023." T. at 17 (*See* Dkt. No. 9-2). Applying the five-step disability sequential evaluation, the ALJ first noted that plaintiff "did not engage

in substantial gainful activity during the period from her alleged onset date of July 21, 2022, through her date last insured of September 30, 2023." *Id*. (*See* Dkt. No. 9-2).  At step two, the ALJ found that, "[t]hrough the date last insured, [plaintiff] had the following severe impairments: degenerative changes of the lumbar spine, degenerative changes of the cervical spine, fibromyalgia, diabetes, [irritable bowel syndrome ("IBS")], sleep apnea, asthma, hypersomnia, obesity, bipolar disorder, an anxiety disorder[,] and PTSD." *Id*. (*See* Dkt. No. 9-2).  At step three, the ALJ determined that, "[t]hrough the date last insured, [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 19 (*See* Dkt. No. 9-2).

Before reaching step four, the ALJ concluded that through the date of last insured, plaintiff retained the residual functional capacity ("RFC") to

> perform light work[6] as defined in 20 CFR 404.1567(b) except she should not work at unprotected heights or in close proximity to dangerous machinery or moving mechanical parts of equipment.  The claimant should not climb ladders/ropes/scaffolds, balance, as defined in the [Selected Characteristics of Occupations ("SCO")], kneel, crouch or crawl. She can occasionally climb ramps/stairs and stoop.  The claimant should have no concentrated exposure to respiratory irritants such as dust, odors, fumes, gases, wetness, humidity and extreme hot/cold temperatures.  She can understand, remember and carry out simple instructions.  The claimant can use judgment to make simple, work-related decisions.  She can work at a job with occasional changes in the routine work setting.  She cannot perform

---

[6] 20 C.F.R. §§ 404.1567(b) and 416.967(b) provide that the physical exertion requirements for "light work":

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b); 416.967(b).

work requiring a specific production rate, such as an assembly line, or work that requires hourly quotas. She can have occasional contact with coworkers, supervisors and the public. She can use the bathroom and change positions during ordinary breaks and the lunch hour.

*Id*. at 21 (*See* Dkt. No. 9-2). At step four, the ALJ determined that plaintiff "has no past relevant work." *Id*. at 25 (*See* Dkt. No. 9-2). Before reaching step five, the ALJ concluded that the "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work." *Id*. (*See* Dkt. No. 9-2). At step five, the ALJ determined that "[t]hrough the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." *Id*. (*See* Dkt. No. 9-2). The ALJ concluded that plaintiff "was not under a disability, as defined in the Social Security Act, at any time from July 21, 2022, the alleged onset date, through September 30, 2023, the date last insured." *Id*. at 26 (*See* Dkt. No. 9-2).

## IV. **Discussion**

### A. **The Parties' Arguments**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence for two reasons. *See* Dkt. No. 12 at 14-21. First plaintiff argues that the ALJ failed to apply the supportability and consistency factors to state consultative examiner Dr. Grassl's opinion. *See id*. at 14-18. Plaintiff notes that the ALJ "briefly mentions the opinion of Dr. Grassl, finding it 'less persuasive' because the opinion was rendered 'several years prior to the period in question.'" *Id*. at 15 (citing T. at 24). However, plaintiff argues that the ALJ's decision does not contain "any discussion of the supportability or consistency factors." *Id*. Plaintiff further argues that even though Dr. Grassl's opinion was issued prior to the alleged onset date, "[t]he Commissioner's regulations require that

7

ALJ's evaluate all opinion evidence within the record." *Id*. at 16 (citing 20 CFR § 404.1520c(b)). Second, plaintiff argues that the ALJ's RFC determination fails to account the limitations her sleep apnea causes, hypersomnia, and IBS, despite the ALJ determining that these conditions were severe impairments. *See id*. at 18-21. More specifically, plaintiff maintains that (1) the ALJ failed to discuss "any restrictions related to [her] hypersomnia" or explain how "normal breaks would account for her uncontrolled IBS[,]" (2) none of the medical opinions the ALJ relied upon consider her hypersomnia or IBS, and (3) ALJ did not account for "the constant exhaustion caused by [her] . . . hypersomnia and sleep apnea." *Id*. at 19.

The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed. *See* Dkt. No. 13 at 7-18. In response to plaintiff's arguments, the Commissioner contends that "[b]ecause Dr. Grassl's report significantly predated and thus was not probative of the relevant period, the ALJ had no requirement to discuss the supportability and consistency of the opinion." *Id*. at 9. Alternatively, the Commissioner argues that even if the ALJ had considered Dr. Grassl's opinion, the issue is moot because Dr. Grassl opined that plaintiff's mental limitations were less restrictive than those assigned by the ALJ. *See id*. at 10. The Commissioner also argues that although the ALJ determined IBS, sleep apnea, and hypersomnia were severe impairments, the ALJ is not required to assign any corresponding functional limitations for these conditions as part of the RFC determination. *See id*. at 11-12 (citing *Christine M. v. Saul*, No. 8:18-CV-1358 (DJS), 2019 WL 5307316, at *3 (N.D.N.Y. Oct. 21, 2019)). The Commissioner maintains that the evidence supporting plaintiff's argument concerning her IBS, sleep apnea, and hypersomnia is comprised mostly of subjective complaints without

any further support.  *See id*. at 13, 15.  The Commissioner further argues that the medical opinions of record consider these conditions and support the ALJ's RFC determination. *See id*. at 13-14, 16-17.

In reply plaintiff argues that (1) the case law cited the Commissioner cites does not apply the current version of the regulations, (2) not all parts of Dr. Grassl's opinion were less restrictive than the ALJ's RFC determination, and (3) the Commissioner's arguments are nonresponsive to the claims plaintiff raised in her cross-motion.  *See generally* Dkt. No. 14.

### B.  **Consideration of Medical Evidence**

"An ALJ is required to consider all of the medical opinion evidence in the record." *Crane v. Comm'r of Soc. Sec. Admin.*, No. 22-CV-7133 (JMW), 2024 WL 4569417, at *14 (E.D.N.Y. Oct. 24, 2024) (quoting *Hahn v. Saul*, 20-CV-6124 (KAM), 2023 WL 4975970, at *4, (E.D.N.Y. Aug. 3, 2023) (citing 20 C.F.R. § 404.1520c(b))) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record.").  "Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the Social Security Act."  *Berry v. Comm'r of Soc. Sec.*, No. 22-CV-7615 (PKC), 2024 WL 1382765, at *5 (E.D.N.Y. Mar. 21, 2024) (quoting *Williams v. Kijakazi*, No. 20-CV-8469 (JLC), 2022 WL 799478, at *12 (S.D.N.Y. Mar. 16, 2022) (quoting *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013))); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c).

"However, [a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the Court] to glean the rationale of an ALJ's

9

decision." *Tina S. v. Comm'r of Soc. Sec.*, No. 1:21-CV-219 (JLS), 2023 WL 4286039, at *6 (W.D.N.Y. June 29, 2023) (quoting *Cichocki V. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013)) (internal quotation marks omitted). "Failure to discuss medical opinion evidence may be harmless error." *Id*. (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)) ("[W]here application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration."); *see Jessica Lynn J. v. Comm'r of Soc. Sec.*, 645 F. Supp. 3d 128, 134 (W.D.N.Y. 2022) ("failure to discuss and/or weigh a medical opinion is not *per se* remandable error but may be found harmless error.").

### 1. **Dr. Grassl**

Dr. Grassl is a state consultative medical examiner who examined plaintiff on August 13, 2020. *See* T. at 997-1000 (*See* Dkt. No. 9-7). Plaintiff reported to Dr. Grassl that she (1) slept twelve-to-sixteen hours per day; (2) had a normal appetite; and (3) bathed one day per week due to lack of motivation. *See id*. at 997, 999 (*See* Dkt. No. 9-7). Plaintiff stated that her "[d]epressive symptomatology ha[d] improved with treatment, but she still experience[d] loss of usual interest and social withdrawal." *Id*. at 997(*See* Dkt. No. 9-7). "She denied suicidal or homicidal ideation, intent, or plan in the past 30 days." *Id*. (*See* Dkt. No. 9-7). Plaintiff stated that "her last manic episode was approximately a year ago with increased need for sleep, distractibility, elevated mood, flight of ideas, and excessive involvement in pleasurable activities." *Id*. (*See* Dkt. No. 9-7). Plaintiff "denied symptoms of formal thought disorder" and "endorsed short-term memory deficits and concentration difficulties." *Id*. (*See* Dkt. No. 9-7).

Dr. Grassl stated that although plaintiff "endorsed exposure to trauma and hypervigilance, she did not meet full criteria for PTSD." T. at 997 (*See* Dkt. No. 9-7). Dr. Grassl diagnosed plaintiff with bipolar I disorder and unspecified anxiety disorder. *See id*. at 999 (*See* Dkt. No. 9-7). Dr. Grassl opined that plaintiff was

> moderately limited in her ability to sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, and regulate emotions, control behavior, and maintain well being. No evidence of limitation in her ability to understand, remember, and apply simple directions and instructions, understand, remember, and apply complex directions and instructions, use reason and judgment to make work-related decisions, interact adequately with supervisors, coworkers, and the public, maintain personal hygiene and appropriate attire, or be aware of normal hazards and take appropriate precautions. Difficulties are caused by psychiatric problems.

*Id*. (*See* Dkt. No. 9-7).

In the hearing decision on appeal, the ALJ concluded that Dr. Grassl's opinion was less persuasive because it was "rendered several years prior to the period in question. However, it is noteworthy that . . . psychologist Grassl found no more than a moderate limitation in any area." T. at 24 (*See* Dkt. No. 9-2). As stated above, the plaintiff argues that the Commissioner committed reversible error by failing to address the supportability and consistency factors regarding Dr. Grassl's opinion. *See* Dkt. No. 12 at 14-18. In response, the Commissioner argues that Dr. Grassl's opinion is not probative of plaintiff's conditions because her opinion was proffered "almost two years" prior to the alleged onset date. Dkt. No. 13 at 9. The Commissioner alternatively argues that Dr. Grassl's opinion of moderate or no mental limitations was less restrictive than the ALJ's RFC finding and plaintiff's argument is therefore moot. *See id*. at 10. The Court concludes that the Commissioner's arguments lack merit.

The undersigned agrees with the Commissioner that Dr. Grassl issued her opinion in August 2020, approximately two years prior to plaintiff's alleged onset date. *See* T. at 76, 999 (*See* Dkt. Nos. 9-3, 9-7). However, the undersigned disagrees that this fact alone renders Dr. Grassl's opinion irrelevant to the analysis of plaintiff's mental health conditions, such that the ALJ did not have to consider the opinion.[7] Here, Dr. Grassl opined on plaintiff's mental health symptoms and limitations stemming from plaintiff's bipolar disorder, anxiety disorder, and PTSD. *See* T. at 997-1000 (*See* Dkt. No. 9-7). These are the same conditions that the ALJ determined were severe impairments and the same or similar conditions, symptoms, and limitations that Dr. Komareth and Dr. Lyons analyzed in their medical source statements.[8] *See id*. at 17, *Compare* T. at 997-1000, *with* 3892-96, *and* 4880-84 (*See* Dkt. Nos. 9-2, 9-7, 9-13, 9-20).

The SSA is required to develop a "complete medical history for at least the 12 months preceding the month in which" a plaintiff files an application for benefits "unless

---

[7] The Court notes that the Commissioner does not argue that Dr. Grassl's opinion is stale. "[A]n ALJ should not rely on 'stale' [medical source] opinions . . . ." *Steve P. v. Comm'r of Soc. Sec.*, No. 19-CV-492 (MWP), 2021 WL 307566, at *5 (W.D.N.Y. Jan. 29, 2021) (quoting *Robinson v. Berryhill*, No. 1:17-CV-362 (LJV/JJM), 2018 WL 4442267, at *4 (W.D.N.Y. Sept. 17, 2018)). "In general, medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Michael R. D. v. Comm'r of Soc. Sec.*, No. 1:21-CV-215 (JLS), 2023 WL 3869022, at *4 (W.D.N.Y. June 7, 2023) (quoting *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016) (summary order)) (internal quotation marks omitted). "Medical opinions are rendered 'stale' by a 'new significant diagnosis' or 'significant deterioration' in the plaintiff's condition." *Angele J. W. v. Comm'r of Soc. Sec.,* No. 6:23-CV-824 (BKS/CFH), 2024 WL 4204301, at *5 (N.D.N.Y. July 24, 2024), *report and recommendation adopted,* No. 6:23-CV-824 (BKS/CFH), 2024 WL 4204017 (N.D.N.Y. Sept. 16, 2024) (quoting *Benitez v. Comm'r of Soc. Sec.*, No. 23-CV-1327 (ARL), 2024 WL 1332612, at *8 (E.D.N.Y. Mar. 28, 2024) (quoting *Andrea G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1253 (TWD), 2022 WL 204400, at *7 (N.D.N.Y. Jan. 24, 2022))); *see Carney v. Berryhill*, No. 16-CV-269 (FPG), 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017) ("[A] medical opinion may be stale if it does not account for the [plaintiff's] deteriorating condition."). The passage of time does not render a medical source opinion "stale" as long as "the subsequent evidence does not undermine [the opinion evidence]." *Steve P.*, 2021 WL 307566, at *5 (quoting *Hernandez v. Colvin*, No. 15-CV-6764 (CJS), 2017 WL 2224197, at *9 (W.D.N.Y. May 22, 2017) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order) (additional citation omitted))).

[8] Although the ALJ rejected Dr. Komareth's and Dr. Lyons' opinions as unpersuasive, Dr. Komareth and Dr. Lyons reviewed the same conditions and symptoms as Dr. Grassl, and the ALJ's rejection of their opinions was used to determine plaintiff's RFC. *See* T. at 24 (*See* Dkt. No. 9-2).

there is a reason to believe that development of an earlier period is necessary or unless [the plaintiff states] that [their] disability began less than 12 months before [they] filed [their] application." 20 C.F.R. § 404.1512(b)(1). "For applications for [DIB], as here, the relevant period is the alleged disability onset date to the date last insured." *Crespo v. Comm'r of Soc. Sec.*, No. 3:18-CV-0435 (JAM), 2019 WL 4686763, at *3 (D. Conn. Sept. 25, 2019) (citing 20 C.F.R. §§ 404.1512(b)(1), 404.1512(b)(1)(ii)). Generally, "[c]onsideration of evidence outside the relevant periods of disability . . . is not afforded significant or convincing weight when reviewing whether an ALJ's conclusions were supported by substantial evidence." *Anderson v. Comm'r of Soc. Sec. Admin.*, No. 22-CV-1509 (JMW), 2025 WL 660330, at *12 (E.D.N.Y. Feb. 28, 2025) (citing *Mauro v. Berryhill*, 270 F. Supp. 3d 754, 762 (S.D.N.Y. 2017)).

However, ALJs are permitted to and "regularly review" evidence created prior to the filing date, as it is "often relevant" to the claims period. *Thomas v. Comm'r of Soc. Sec.*, No. 1:18-CV-839 (JJM), 2020 WL 548394, at *3 (W.D.N.Y. Feb. 4, 2020) (quoting *Hussain v. Comm'r of Soc. Sec.*, No. 13 CIV. 3691 (AJN-GWG), 2014 WL 4230585, at *12 (S.D.N.Y. Aug. 27, 2014), report and recommendation adopted, No. 13-CV-3691 (AJN-GWG), 2014 WL 5089583 (S.D.N.Y. Sept. 25, 2014)) ("ALJs regularly review prior evidence for the purpose of considering an open application, as such evidence is often relevant to the claimant's medical condition for the period in which benefits are claimed."). "In fact, there are many instances where an ALJ must consider such prior evidence to properly assess the severity of the claimant's medical condition during the open application period." *Id*. "[E]vidence from before or after the relevant time period often provides necessary context for a disability claim and, if so, an ALJ cannot simply ignore

it." *Angele J. W.*, 2024 WL 4204301, at *5 (quoting *Cheri Lee H. v. Comm'r of Soc. Sec.*, No. 5:19-CV-10 (DNH), 2020 WL 109007, at *5 (N.D.N.Y. Jan. 9, 2020) ("For instance, if plaintiff's evidence suggesting that she suffered frequent migraines (at least before the relevant time period) stood uncontested in the record, it might well be inappropriate for the ALJ to ignore it or to reject it out of hand."); *Norman v. Astrue*, 912 F. Supp. 2d 33, 82 n.74 (S.D.N.Y. 2012) (citation omitted) ("[T]he mere absence of contemporaneous medical evidence of a disabling condition during the relevant time period does not necessarily preclude a finding of disability."); *Cf. Robert V. v. Kijakazi*, No. 3:21-CV-377 (MPS), 2022 WL 4536838, at *3 (D. Conn. Sept. 28, 2022) (concluding that the ALJ did not overlook evidence regarding plaintiff's neurologic and cardiac conditions when there was "no indication that the evidence from outside of the relevant period reflects Plaintiff's condition during the relevant period.").

Accordingly, the undersigned concludes that although Dr. Grassl's opinion was proffered prior to plaintiff's alleged date of onset, the conditions and symptoms she reviewed were the same as the conditions and symptoms the other medical sources reviewed during the relevant period; therefore, Dr. Grassl's opinion is relevant to the ALJ's RFC analysis and should have been addressed. *See Angele J. W.*, 2024 WL 4204301, at *5; *Thomas*, 2020 WL 548394, at *3; *Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793-JWF, 2019 WL 1230081, at *2 (W.D.N.Y. Mar. 15, 2019) (citation omitted) ("While the ALJ may have had sound arguments to discredit some of these opinions – either because they were from non-acceptable medical sources, were not particularly helpful, or came before the alleged onset date – they were relevant at the very least and she should have at least addressed them.").

14

Furthermore, the undersigned notes the Commissioner's reliance on *Simpson* in support of his arguments.  *See* Dkt. No. 13 at 9-10 (citing *Simpson v. Comm'r of Soc. Sec.*, No. 24-1104, 2025 WL 1156973, at *2 (2d Cir. Apr. 21, 2025) (summary order)).  Yet, the facts in *Simpson* differ from the present matter.  In *Simpson*, the Second Circuit affirmed an ALJ's decision that rejected a treatment note from one of the plaintiff's medical providers because the treatment note was dated 4.5 years before the plaintiff's claimed onset date.  *Simpson*, 2025 WL 1156973, at *2.  The Court explained that even if the ALJ had credited the treatment note as a medical opinion, there was "'no reasonable likelihood' that the note 'would have changed the ALJ's determination.'"  *Simpson*, 2025 WL 1156973, at *2 (quoting *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)).  Here, Dr. Grassl rendered her opinion approximately two years prior to plaintiff's alleged onset date, well before the 4.5 years of the treatment record in *Simpson*.  *See* T. at 997-1000 (*See* Dkt. No. 9-7).  Additionally, as will be discussed below, the ALJ's consideration of Dr. Grassl's opinion may change the RFC determination.

In passing, the ALJ rejected Dr. Grassl's opinion because Dr. Grassl found "no more than a moderate limitation in any area."  T. at 24 (*See* Dkt. No. 9-2).  The Commissioner argues that this finding renders plaintiff's argument moot because the ALJ determined plaintiff suffered from more restrictive limitations than Dr. Grassl.  *See* Dkt. No. 13 at 10.  The Commissioner's argument is factually incorrect.

As stated above, the ALJ determined that plaintiff can "understand, remember and carry out simple instructions"; "use judgment to make simple, work-related decisions"; "work at a job with occasional changes in the routine work setting"; and "have occasional contact with coworkers, supervisors and the public."  T. at 21 (*See* Dkt. No. 9-2).  The ALJ

also determined that plaintiff "cannot perform work requiring a specific production rate, such as an assembly line, or work that requires hourly quotas."  In addition to these abilities and limitations, Dr. Grassl opined that the plaintiff was also moderately limited in her ability to have "regular attendance at work, and regulate emotions, control behavior, and maintain well-being."  T. at 999 (*See* Dkt. No. 9-7).  The ALJ did not address any of these additional limitations set forth by Dr. Grassl when formulating her RFC determination.  *See* T. at 24 (*See* Dkt. No. 9-2).  As the ALJ did not determine whether these additional limitations affect plaintiff's RFC, judicial review is frustrated, and remand is necessary for the ALJ to render a determination in the first instance.  *See Kaliegh O. v. Comm'r of Soc. Sec.*, No. 5:19-CV-940 (TWD), 2020 WL 5751171, at *5 (N.D.N.Y. Sept. 25, 2020) (citing *Bartrum v. Astrue*, 32 F. Supp. 3d 320, 331 (N.D.N.Y. 2012)) ("[I]t is the ALJ's responsibility to make factual findings in the first instance, not this Court's."); *Rodgers v. Saul*, No. 3:19-CV-653 (JCH), 2020 WL 13551952, at *4 (D. Conn. May 28, 2020) (noting that "it is the role of the ALJ, the factfinder in the first instance" to consider the evidence); *Williams v. Astrue*, No. 10-CV-5521 (CBA), 2012 WL 3096694, at *1 (E.D.N.Y. July 30, 2012) ("[I]t is for the Social Security Administration, not this Court, to weigh conflicting evidence in the first instance and fully develop the record[.]").

Accordingly, the Court concludes that remand is necessary for the ALJ to consider Dr. Grassl's opinion.  *See Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (quoting *Malcolm M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (first citing *Martone v. Apfel*, 70 F. Supp.

16

2d 145, 150 (N.D.N.Y. 1999), then citing 20 C.F.R. §§ 404.1545, 416.945))) ("RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms."); 20 C.F.R. §§ 416.920c(c)(1)-(2)

The Court will not address plaintiff's remaining arguments which the ALJ may consider on remand. *See Devra B. B. v. Comm'r of Soc. Sec.*, No. 6:20-CV-643 (BKS), 2021 WL 4168529, at *8 (N.D.N.Y. Sept. 14, 2021) ("Because the Court has determined that remand is required, the Court does not reach Plaintiff's remaining arguments."); *Shields v. Astrue*, No. 11-CV-2088 (FB), 2012 WL 1865505, at *3 (E.D.N.Y. May 22, 2012) ("In light of the decision to remand this case with instructions to consider new evidence on Shields's cardiac condition, it is not necessary to address this argument."); *Mary S. v. Kijakazi*, No. 3:21-CV-1095 (RMS), 2022 WL 4074536, at *17 (D. Conn. Aug. 26, 2022) (quoting *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 94 (2d Cir. 2019) ("[S]ince the 'case must return to the agency either way for the reasons already given . . . the Commissioner will have the opportunity on remand to obviate th[ese] dispute[s] altogether by' addressing the remaining arguments on remand."); *Annunziato v. Berryhill*, No. 3:17-CV-606 (JAM), 2019 WL 156934, at *4 (D. Conn. Jan. 10, 2019) ("The ALJ shall also consider plaintiff's remaining arguments on remand.").

## V. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**ORDERED**, that plaintiff's cross-motion (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED**, that the Commissioner's cross-motion (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that the Commissioner's decision is **REVERSED, and the matter REMANDED for further proceedings**; and it is

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision & Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Date:   March 9, 2026
          Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

18